Carla M. HARMON, Plaintiff–Appellant,

v.

FRED S. JAMES & CO. OF COLORADO, INC., Defendant–Appellee.

No. 93CA0798.

Colorado Court of Appeals, Div. II.

Nov. 17, 1994.

Rehearing Denied Dec. 22, 1994.

Certiorari Denied July 24, 1995.

James A. Carleo, Colorado Springs, for plaintiff-appellant.

Wood, Ris & Hames, P.C., Christian M. Lind, Denver, for defendant-appellee.

Opinion by Chief Judge STERNBERG.

This action for bad faith breach of an insurance contract was initiated by plaintiff, Carla M. Harmon, against defendant, Fred S. James & Co. of Colorado, Inc., as the result of a series of disputes over the processing of her workers' compensation claim during a three-year period. The trial court held that the applicable statute of limitations, § 13–80–102, C.R.S. (1987 Repl.Vol. 6A), barred recovery for conduct that occurred more than two years before she filed her complaint. Plaintiff appeals the partial summary judgment entered as a result of this ruling, and we affirm.

In January of 1987, the plaintiff suffered serious injuries while on the job and subsequently filed a claim for workers' compensation benefits from her employer, El Paso County. The defendant adjusted the claim and provided benefits on behalf of the self-insured, El Paso County Workers' Compensation Pool.

Disputes between plaintiff and the defendant regarding late payment of benefits began soon after the claim was filed. The plaintiff received letters from creditors demanding payment and threatening collection procedures. On October 19, 1987, the plaintiff's attorney sent a letter to the insurer claiming that the insurer was acting in bad faith regarding vocational rehabilitation benefits, delayed payment of medical bills, and in failing to provide promptly benefits which had been prescribed for the plaintiff. When the disputes persisted, the plaintiff filed a complaint alleging bad faith breach of an insurance contract on June 4, 1990.

The trial court granted defendant's motion for partial summary judgment, ruling that recovery based on defendant's alleged bad faith conduct that occurred prior to June 4, 1988, was barred by the two-year tort statute of limitations. The court also ruled that evidence of the time-barred conduct could be admitted under CRE 404(b) for the limited purposes of showing absence of mistake and the motive of the insurer. The trial proceeded to a jury which awarded the plaintiff no damages. This appeal followed.

■ Bad faith breach of an insurance contract occurs in a first-party context when an insurer unreasonably denies or delays making payment on a valid claim of its insured. The plaintiff must show that the insurer acted unreasonably and with either knowledge or reckless disregard of the unreasonableness of the conduct. *Traveler's Insurance Co. v. Savio,* 706 P.2d 1258 (Colo.1985).

■ Since the claim sounds in tort, it is barred under § 13–80–102, C.R.S. (1987 Repl.Vol. 6A) unless it is brought within two years after the cause of action accrues; *i.e.,* within two years after the date on which both the injury and its cause are known or should have been known through the exercise of reasonable diligence. Section 13–80–108(1), C.R.S. (1987 Repl.Vol. 6A). *See Mastro v. Brodie,* 682 P.2d 1162, 1168 (Colo.1984) ("[T]he statute of limitations begins to run when the claimant has knowledge of the facts which would put a reasonable person on notice of the nature and extent of the injury and that the injury was caused by the wrongful conduct of another").

On appeal, the plaintiff contends that the standard set forth in § 13–80–108(1) for determining the accrual date of a claim should be construed so that the statute of limitations on a claim for bad faith breach of an insurance contract does not begin to run until either: (1) the conclusion of the underlying workers' compensation claim or (2) the date of the last incident of bad faith conduct. The plaintiff argues that, because of the unique nature of workers' compensation bad faith cases which makes a precise determination of the date of the occurrence of the tort difficult, such a construction is required. We disagree.

## I.

The plaintiff relies on *Comstock v. Collier,* 737 P.2d 845 (Colo.1987) for the proposition that the statute of limitations in this type of first-party bad faith action should not begin to run until the conclusion of the underlying workers' compensation claim. The plaintiff contends that, because the ongoing relationship between a workers' compensation claimant and the insurer is analogous to the relationship described in *Comstock* between a doctor and patient during a continuous course of treatment, the rule announced in that case should apply here. The plaintiff's reliance on *Comstock* is misplaced.

The medical malpractice statute under consideration in *Comstock v. Collier, supra,* established a two-year limitations period triggered by the accrual date of a claim, and it also included a repose provision which barred the filing of an action more than three years after the negligent "act or omission," regardless of when the resulting injury was or should have been discovered. *See* Colo.Sess. Law 1977, ch. 198, § 13–80–105 at 816.

The supreme court held that a continuous course of improper treatment could be considered a single "act or omission," so that the repose period would not commence until the end of the course of treatment. The *Comstock* court explained that, when the alleged negligence consists of a continuous course of treatment, the date of any one particular act or omission causing injury may be impossible to determine and the patient may not discover the injury until termination of the course of treatment.

In reaching this conclusion, the court also held that the continuing nature of the treatment did not toll the statute of limitations on the malpractice claim: "Therefore, an action may be barred by the statute of limitations even before the statute of repose is triggered if the injury is discovered or should have been discovered but the treatment continues." *Comstock v. Collier, supra,* 737 P.2d at 849.

Prior to October of 1987, the plaintiff knew about the delays in benefit payments and

that the defendant was responsible for those delays. Indeed, the plaintiff's frustration with the delays in payment prompted her to seek the services of an attorney. Even though she knew that she had a cause of action for bad faith, as evidenced by the letter to the defendant from her attorney, the plaintiff did not file this action until June of 1990.

■ In light of these facts and the holding in *Comstock*, we conclude that the existence of an ongoing relationship between an insurer and an insured did not provide a basis for tolling the two-year limitations period applicable to claims for bad faith breach of an insurance contract. *See Denver United States National Bank v. People ex rel. Dunbar*, 29 Colo.App. 93, 480 P.2d 849 (1970) (liberal construction does not permit a court to rewrite a statute, and such principle is to be used only when the wording of the statute creates a doubt).

## II.

■ Alternatively, the plaintiff urges a construction of § 13–80–102 that would permit bad faith claims to be brought within two years of the last incident of unreasonable conduct by an insurer. To support this contention, the plaintiff relies on the "continuing violation" doctrine employed by the federal courts in cases involving anti-discrimination statutes such as Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. (1988). We find these cases to be inapposite. We are not aware of any authority in which a court has extended the "continuing violation" doctrine to a bad faith claim. We decline to do so here.

The plaintiff asserts that this case is analogous to hostile environment and harassment cases because the tort develops over time, consists of numerous incidents, and must be evaluated by assessing the totality of the circumstances. The plaintiff argues that this court should view the instances of bad faith conduct as a "continuing violation" of the duty an insurer owes to its insured rather than as distinct and separate tortious acts. Accordingly, the plaintiff could recover for acts which were barred by the limitation period.

■ Under the "continuing violation" doctrine, if an employer has engaged in a series of unlawful acts over an extended period of time, a plaintiff may be allowed "to get relief for a time-barred act by linking it with an act that is within the limitation period." *Selan v. Kiley*, 969 F.2d 560, 564 (7th Cir.1992).

The doctrine has been applied in three distinctly different cases. The first involves hiring or promotion practices in which the decision-making process takes place over a period of time, making it difficult to pinpoint the exact day the "violation" occurred. In the second situation, the employer has an express, openly espoused policy that is alleged to be discriminatory. In the third, the plaintiff alleges that the employer has covertly engaged in a practice of discrimination which is evidenced only by a series of discrete, allegedly discriminatory, acts. *Stewart v. CPC International, Inc.*, 679 F.2d 117 (7th Cir.1982). The relevant distinction in the last situation is between "isolated and sporadic outbreaks of discrimination and a dogged pattern." *Bruno v. Western Electric Co.*, 829 F.2d 957, 961 (10th Cir.1987).

Only in the third of these situations is the "continuing violation" doctrine arguably applicable to the case presented here. The determinative question is whether the defendant's acts were "related closely enough to constitute a 'continuing violation'" or were "merely discrete, isolated, and completed acts which must be regarded as individual violations." *Berry v. Board of Supervisors of L.S.U.*, 715 F.2d 971, 981 (5th Cir.1983).

The most important factor to consider in making this determination is whether the act has the "degree of permanence which should trigger an employee's awareness of and duty to assert his or her right...." *Berry v. Board of Supervisors of L.S.U., supra*, 715 F.2d at 981. An employee's lack of awareness that isolated acts by the employer constitute a pattern of discrimination is the critical factor to justify viewing the isolated acts as a "continuing violation."

In *Malhotra v. Cotter & Co.*, 885 F.2d 1305, 1310 (7th Cir.1989), the court explained the justification for treating a series of sepa-

rate violations as a single continuing violation as follows:

> [I]t would have been unreasonable to require the plaintiff to sue separately on each one. In the setting of alleged discrimination, ordinarily this will be because the plaintiff had no reason to believe he was a victim of discrimination until a series of adverse actions established a visible pattern of discriminatory treatment.

A series of unlawful acts can be viewed properly as a "continuing violation" only if "their character was not apparent when they were committed but became so when viewed in the light of the later acts." *Moskowitz v. Trustees of Purdue University,* 5 F.3d 279, 282 (7th Cir.1993).

In *Patel v. Thomas,* 793 P.2d 632 (Colo. App.1990), a division of this court applied the "continuing violation" doctrine to a Title VII sexual harassment action. The court explained that a viable cause of action based on sexual harassment generally does not accrue after a single act and that the exact moment at which harassment matures into a compensable injury is elusive. Such is not the case in a workers' compensation bad faith claim.

■ The "continuing violation" doctrine is no different than the standard established by § 13–80–108(1) which applies the principle that a statutory limitations period begins to run only when a reasonable person would be on notice that he or she has been injured by the defendant's wrongful conduct. Although the plaintiff's claims arose out of a continuing relationship with the defendant, we hold that each of the defendant's acts constituted a separate and distinct tortious act for which the limitations period began to run when the plaintiff became aware of the injury and its cause.

Unlike the harassment and hostile environment cases, a claim of bad faith may arise from one episode of unreasonable conduct by an insurer. In *Savio, supra,* the insurer's unreasonable failure to provide vocational rehabilitation benefits, as required by statute, to a workers' compensation claimant gave rise to a cause of action for bad faith breach of an insurance contract. *See also Rederscheid v. Comprecare, Inc.,* 667 P.2d 766 (Colo.App.1983) (failure to pay for a surgical

procedure); *Hiatt v. Schreiber,* 599 F.Supp. 1142 (D.Colo.1984) (failure to pay for damage to the insured's truck); *Schultz v. Allstate Insurance Co.,* 764 F.Supp. 1404 (D.Colo. 1991) (failure to make timely payment of P.I.P. benefits). Under the rule of these cases, a repeated series of actions and breaches of the insurance contract need not occur for the plaintiff to sustain a compensable injury.

The plaintiff agrees that a single act may constitute bad faith but argues that a plaintiff's bad faith claim based on one instance of conduct may not succeed at trial. This is the risk any plaintiff undertakes when bringing a lawsuit and cannot be the basis for extending the limitations period.

As the plaintiff notes, a workers' compensation claim involving permanent injury may continue for ten years or longer. Construing § 13–80–108(1) under either theory urged by the plaintiff would permit present recovery based on conduct known by the plaintiff to have occurred ten years or more in the past.

Such a construction would yield impractical results that are contrary to the underlying policy of limitations periods. When claims are not promptly pursued, evidence may be lost and witnesses may disappear. Furthermore, the purpose of statutes of limitation is to promote justice, discourage unnecessary delay and forestall prosecution of stale claims. *Jones v. Cox,* 828 P.2d 218 (Colo. 1992).

Accordingly, we conclude that the trial court properly held that § 13–80–102 barred recovery for conduct that occurred more than two years before the plaintiff filed her complaint.

The partial summary judgment is affirmed.

MARQUEZ, J., concurs.

TAUBMAN, J., specially concurs.

Judge TAUBMAN specially concurring.

Because I believe it is unnecessary to reach the issues addressed by the majority, I concur in the result only. Under § 13–80–108(1), C.R.S. (1987 Repl.Vol. 6A), a cause of action accrues on the date on which both the

injury and its cause are known or should have been known through the exercise of reasonable diligence. Here, plaintiff's workers' compensation attorney sent a letter to the insurer on October 19, 1987, asserting that the insurer was acting in bad faith concerning its handling of plaintiff's workers' compensation claim. Thus, in my view, the cause of action here accrued on that date, and therefore, a complaint had to be filed on or about October 20, 1989. Since here it was not even filed until June 4, 1990, it was barred. Accordingly, I find it unnecessary to address the issues discussed by the majority.