851 N.E.2d 393 (2006)
In the Matter of the ESTATE OF Natalda I. YOUNG, Deceased.
Phillip L. Nusbaum, Personal Representative, Appellant,
v.
Indiana Department of State Revenue, Inheritance Tax Division, Appellee.
No. 49T10-0504-TA-37.
Tax Court of Indiana.
July 27, 2006.
*394 Matthew S. Carr, Marc A. Hetzner, Eric A. Manterfield, Krieg Devault LLP, Indianapolis, IN, Loren R. Sloat, Kindig & Sloat, PC, Nappanee, IN, Attorneys for Appellant.
Steve Carter, Attorney General of Indiana, Kristen M. Kemp, Jennifer E. Gauger, Deputy Attorneys General, Indianapolis, IN, Attorneys for Appellee.
FISHER, J.
The Estate of Natalda I. Young (Natalda's Estate) appeals the Elkhart County Circuit Court's (probate court) order determining its Indiana inheritance tax liability. The sole issue before this Court is whether the probate court erred when it determined that the assets contained in the Natalda Young Trust (the Widow's Trust) were subject to Indiana inheritance tax.

FACTS AND PROCEDURAL HISTORY
Ralph H. Young (Ralph) died on January 26, 1993. He was survived by his wife, Natalda I. Young (Natalda) and two daughters from a previous marriage.
Before his death, Ralph created and funded the Ralph H. Young Trust (Ralph's Trust). Ralph provided that upon his death, certain charitable gifts, a transfer to his children and grandchildren in trust, two non-familial bequests, and the payment of expenses resulting from his estate's administration were all to be made from Ralph's Trust. The balance in Ralph's Trust was then to be transferred to another trust, the Widow's Trust.
On November 19, 1993, Ralph's Estate filed an Indiana inheritance tax return reporting, among other things, that the value of the assets transferred into the Widow's Trust was approximately $1.2 million. As co-personal representatives of Ralph's Estate, Natalda and Ralph's daughter, Janice Buckley, also stated on the return that they "have elected to treat the assets of [the] Widow's Trust as qualified terminable interest property [QTIP], and therefore exempt [those assets] from estate and inheritance tax until the termination of the Widow's Trust." (Appellee's App. at 12.) Consequently, in computing its inheritance tax liability, Ralph's Estate treated the transfer of assets to the Widow's Trust as QTIP property passing from a decedent to a surviving spouse and took an exemption thereon as provided by Indiana Code § 6-4.1-3-7. On December 27, 1993, the Elkhart Superior Court III issued an order in which it accepted the inheritance tax return as filed by Ralph's Estate. On April 4, 1994, the Indiana Department of State Revenue, Inheritance Tax Division (Department) issued a closing letter to Ralph's Estate.
Natalda died on June 9, 2001. When Natalda's Estate subsequently filed its Indiana inheritance tax return, it reported a total taxable estate of $3,040,027.42 ($2,272,285.00 of which was attributable to the value of the assets contained in the Widow's Trust) and a resulting inheritance tax liability of $107,430.80. On July 12, 2002, the probate court entered its "Order Determining Inheritance Tax Due" in the amount of $107,403.80.
On October 23, 2002, the Department filed a "Petition for Rehearing, Reappraisement and Redetermination of Inheritance and Transfer Tax" (Petition) with the probate court. In its Petition, the Department alleged that Natalda's Estate misclassified several of its beneficiaries and, as a result, used erroneous tax rates in calculating its overall tax liability. As a result, the Department claimed that Natalda's Estate owed another $242,205.36 in inheritance taxes.
*395 While the Department's Petition was pending with the probate court, Natalda's Estate filed an amended inheritance tax return in which it claimed that the $2,272,285.00 in assets contained within the Widow's Trust should not have been subject to inheritance tax. More specifically, Natalda's Estate argued that Natalda and Janice Buckley, as the co-personal representatives of Ralph's Estate, failed to properly elect QTIP treatment on the transfer of assets into the Widow's Trust pursuant to Indiana Code § 6-4.1-3-7 and, as a result, the transfer of those assets upon Ralph's death was not entitled to the QTIP exemption. Natalda's Estate therefore asserted that Ralph's Estate should have been responsible for the inheritance tax due on the transfer of those assets.[1]
After conducting a hearing, the probate court issued two orders. In the first order, issued on March 15, 2005, the probate court rejected the amended return and the claim for refund filed by Natalda's Estate. Then, on April 13, 2005, the probate court issued another order ruling that, due to its misclassification of certain beneficiaries and its use of incorrect tax rates, Natalda's Estate owed another $237,689.53 in inheritance taxes.[2]
On April 15, 2005, the Estate filed an appeal with this Court. The Court heard the parties' oral arguments on January 20, 2006. Additional facts will be supplied as necessary.

STANDARD OF REVIEW
The Indiana Tax Court acts as a true appellate tribunal when it reviews an appeal from a probate court's determination concerning the amount of Indiana inheritance tax due. IND.CODE ANN. § 6-4.1-7-7 (West 2006); Dep't of State Revenue, Inheritance Tax Div. v. Estate of Phelps, 697 N.E.2d 506, 509 (Ind. Tax Ct.1998). Accordingly, while the Court will afford the probate court great deference in its role as the finder of fact, it will review the probate court's legal conclusions de novo.[3]Id. (citations omitted) (footnote added).

DISCUSSION
In Indiana, "[a]n inheritance tax is imposed at the time of a decedent's death on certain property interest transfers made by him."[4] IND.CODE ANN. § 6-4.1-2-1 *396 (West 2006) (footnote added). The tax is based on the fair market value of the property interest on the date of the decedent's death or on the date used to value the property interest for federal estate tax purposes. IND.CODE ANN. § 6-4.1-5-1.5(a) (West 2006). If a beneficiary receives less than a fee interest in the property transferred by reason of a decedent's death (i.e., a life estate or a future interest), the fair market value of that interest is calculated using actuarial tables. IND.CODE ANN. § 6-4.1-6-1(a) (West 2006). Thus, when a life estate with a remainder is created, both the life tenant and the remainderman will pay Indiana inheritance tax on their proportionate interests, based on the interests' values at the date of the decedent's death. See id; Estate of Hibbs v. Indiana Dep't of State Revenue, Inheritance Tax Div., 636 N.E.2d 204, 207 (Ind. Tax Ct.1994).
Property interests that pass from a decedent to a surviving spouse, however, are exempt from the Indiana inheritance tax. See IND.CODE ANN. § 6-4.1-3-7(a) (West 2006). Therefore, when a decedent transfers a life estate in property to the surviving spouse, no tax is due on that transfer. Nevertheless, the transfer of the remainder interest is subject to tax. The tax on the transfer of that remainder interest may be postponed, however, if the decedent's estate makes a QTIP election. See Estate of Phelps, 697 N.E.2d at 509 (citing A.I.C. § 6-4.1-3-7(c)). The QTIP election allows a decedent to transfer a "qualifying income interest for life"[5] to a surviving spouse while "temporarily" exempting the transfer of the remainder to other beneficiaries. See 26 U.S.C. § 2056(b)[6] (footnote added). Thus, by making a QTIP election, the payment of all Indiana inheritance tax is deferred until the death of the surviving spouse.[7]See Estate of Hibbs, 636 N.E.2d at 207 (footnote added).
QTIP treatment, however, is not automatic. To obtain QTIP treatment, the personal representative of an estate must make an election. "The election . . . shall be made in writing and shall be attached to the inheritance tax return, if one is required to be filed. The election, once made, is irrevocable." A.I.C. § 6-4.1-3-7(d).
Natalda's Estate asserts that the probate court erred when it determined that the assets contained within the Widow's Trust were taxable as a part of Natalda's Estate. To support its assertion, Natalda's Estate relies on Indiana Code § 6-4.1-2-4(d) which states in relevant part:
If at the time of death a surviving spouse has been entitled to income from a property interest that was the subject of a previous transfer exempt from inheritance tax under IC 6-4.1-3-7(b) or IC 6-4.1-3-7(c), then the value of the property interest at the time of death of the surviving spouse is subject to the inheritance tax as if it were a transfer of property owned by the surviving spouse. *397 IND.CODE ANN. § 6-4.1-2-4(d) (West 2006). Natalda's Estate claims that this statute clearly stands for the proposition that "the assets of the [Widow's Trust] can be subject to inheritance tax in [Natalda's Estate] if, and only if, a valid Indiana QTIP election had been made by [Ralph's Estate]." (Appellant's Br. at 10 (emphasis added).) As a result, Natalda's Estate argues that the "critical question" before this Court is whether Ralph's Estate made a valid QTIP election pursuant to Indiana Code § 6-4.1-3-7(d). (See Appellant's Br. at 13. See also Appellant's Br. at 16-23 (asserting that Ralph's Estate did not make a valid QTIP election because: 1) it made its QTIP election on the inheritance tax return itself, and not on a separate document attached to the return; 2) it failed to convey an understanding that the QTIP election it was making was irrevocable; and 3) it failed to make an affirmative, present election, as it used the verb tense "have elected" as opposed to "elect").) The Court disagrees for two reasons.
First, the Elkhart Superior Court IIIthe probate court involved in processing and administering Ralph's Estate nearly 13 years agodetermined the QTIP election made by Natalda and Ralph's daughter as co-personal representatives of Ralph's Estate was valid when it accepted as filed the inheritance tax return of Ralph's Estate. Thus, the argument presented in this case by Natalda's Estate amounts to a collateral attack[8] on the Elkhart Superior Court III's finding. Once a probate court has approved an estate's final report and has discharged the personal representative, however, the probate court's order cannot be collaterally attacked. See McGahan v. Nat'l Bank of Logansport, 151 Ind.App. 658, 281 N.E.2d 522, 525 (1972). See also IND.CODE ANN. § 29-1-17-2 (West 2006).
Second, the foremost goal in construing the meaning of Indiana Code § 6-4.1-2-4(d) is to ascertain and give effect to the legislature's intent. Estate of Hibbs, 636 N.E.2d at 209. In so doing, statutes in pari materia should, if possible, be construed together and harmonized to effectuate the legislature's intent. Rhoade v. Indiana Dep't of State Revenue, 774 N.E.2d 1044, 1048 (Ind. Tax Ct.2002) (citation omitted). Therefore, the meaning of Indiana Code § 6-4.1-2-4(d) should be construed in harmony with Indiana Code § 6-4.1-3-7.
The legislature's intent in enacting Indiana Code § 6-4.1-3-7 was two-fold. First, by exempting property interests that pass from a decedent to a surviving spouse, the legislature gave effect to the concept that marital property is a single economic unit and should therefore remain intact until the death of the surviving spouse. See Estate of Clayton v. Comm'r of Internal Revenue, 976 F.2d 1486, 1492 (5th Cir.1992).[9] Thus, the general goal of the marital exemption is to insure that "any property of the first spouse to die that passe[s] untaxed to the surviving spouse [will] be taxed in the estate of the *398 surviving spouse."[10]Id. at 1491 (footnote added).
In 1982, as divorce and remarriage rates were steadily increasingly nationally, the Indiana legislature adopted the QTIP portion of the statute as a vehicle for those in second marriages who were faced with the difficult choice of "provid[ing] for their spouse to the possible detriment of the children of a prior marriage or [] under-endowing their spouse to provide directly for the children."[11]Estate of Shelfer v. Comm'r of Internal Revenue, 86 F.3d 1045, 1049 (11th Cir.1996) (footnote added). See also 1982 Ind. Acts 55, §§ 2, 3. "[T]he purpose of the QTIP ... was to liberalize the marital [exemption] to cover trust instruments that provide ongoing income support for the surviving spouse while retaining the corpus for the children or other beneficiaries."[12]Estate of Shelfer, 86 F.3d at 1049 (footnote added).
Given the intent and purpose of Indiana Code § 6-4.1-3-7, Indiana's marital deduction and QTIP statute, it is not difficult to discern what Indiana Code § 6-4.1-2-4(d) means in the context of this case. Whether or not Ralph's Estate made a valid QTIP election 13 years ago is a moot point now. The reality is that the assets in the Widow's Trust were transferred from Ralph to Natalda under Indiana Code § 6-4.1-3-7, determined to be exempt from inheritance tax, and therefore went untaxed. As Natalda's Estate readily admits, to accept its argument that Indiana Code § 6-4.1-2-4(d) requires taxation of the assets in the Widow's Trust only if Ralph's Estate made a valid QTIP election is to accept the result that the assets will escape taxation in both Ralph's Estate and Natalda's Estate. (Oral Argument Tr. at 20.) Such a result thwarts the intent of Indiana Code § 6-4.1-3-7.

CONCLUSION
The Court will presume that the legislature intended the language it used in Indiana Code § 6-4.1-2-4(d) to be applied logically and not in a manner that brings about an unjust or absurd result. See State, Civil Rights Comm'n v. County Line Park, Inc., 738 N.E.2d 1044, 1048 (Ind.2000). Natalda's Estate construes Indiana Code § 6-4.1-2-4(d) in a manner that not only produces an absurd result, *399 but also amounts to an impermissible collateral attack on a judgment by a probate court completely "uninvolved" in processing and administering Natalda's Estate. Consequently, this Court finds that the probate court did not err when it determined that the assets contained within the Widow's Trust were subject to Indiana inheritance tax as a part of Natalda's Estate. The judgment of the probate court is therefore AFFIRMED.
NOTES
[1] Based on this claim, Natalda's Estate asserted that its inheritance tax liability should only be $13,105.96 (as opposed to the $107,403.80 it originally calculated). Natalda's Estate therefore seeks a refund of inheritance taxes previously paid in the amount of $88,953.30. (See Appellant's App. at 35.) Natalda's Estate has conceded, however, that it if this Court does determine that the assets contained within the Widow's Trust are taxable as part of Natalda's Estate, it did in fact misclassify the beneficiaries and use incorrect tax rates. (Oral Argument Tr. at 5-6.)
[2] The probate court ruled that, as alleged in the Department's Petition, Natalda's Estate owed the additional $242,205.36. Nevertheless, the probate court determined that Natalda's Estate was entitled to a credit of $4,515.83 on an issue that is not presently before this Court.
[3] Stated differently, this Court

will affirm the probate court's judgment upon `any legal theory supported by evidence introduced at trial.' More specifically, [it] will reverse the probate court's judgment only if there is no substantial evidence of probative value to support the judgment. [It] will not reweigh the evidence, nor will it assess witness credibility.
Estate of Hibbs v. Indiana Dep't of State Revenue, Inheritance Tax Div., 636 N.E.2d 204, 206 (Ind. Tax Ct.1994) (internal citations omitted).
[4] "The tax is not imposed on the property itself, but rather on the transfer of ownership of either the legal or beneficial interest in the property." Id. at 207 (internal quotation, brackets, citation, and emphasis omitted).
[5] A surviving spouse has a qualifying income interest for life if "he/she is entitled to all of the income for life and if, during his/her lifetime, no one has the power to appoint any part of the property to any person other than him/her." Id. (citing 26 U.S.C. § 2056(b)(7)).
[6] Indiana expressly relies on the federal code to define the substance of a QTIP. See IND. CODE ANN. § 6-4.1-3-7(c) (West 2006).
[7] In other words, when the surviving spouse dies, the surviving spouse's qualifying income interest for life is treated as a fee interest for purposes of determining the inheritance tax due upon its transfer to the remaindermen. IND.CODE ANN. § 6-4.1-2-4(d) (West 2006). In turn, "the remainderm[e]n will pay the inheritance tax on the value of the entire property at the date of death of the surviving spouse." Estate of Hibbs, 636 N.E.2d at 207.
[8] As our supreme court previously explained, "[a] collateral attack on a judgment is an attack made in a proceeding that has an independent purpose other than to impeach or overturn the judgment, although impeaching or overturning the judgment may be necessary to the success of the action." Indiana Dep't. of Envt'l. Mgmt. v. Conard, 614 N.E.2d 916, 922 (Ind.1993) (citations omitted).
[9] Because Indiana Code § 6-4.1-3-7 expressly references and relies on its federal equivalent substance, the Court finds the legislative history explaining the reasons for enacting the federal statute applicable to determining the purpose of the state statute at issue in this case. See Estate of Hibbs, 636 N.E.2d at 209.
[10] The Court notes, however, that an outright transfer of property from a decedent to a surviving spouse (as opposed to a partial interest such as a life estate) may escape inheritance tax altogether if, upon the death of the surviving spouse, the surviving spouse has either disposed of the property entirely, transferred the property to an exempt organization (i.e., a charity), or transferred the property to a subsequent spouse.
[11] "According to the House of Representatives Report, the QTIP trust was designed to prevent a decedent from being `forced to choose between surrendering control of the entire estate to avoid imposition of estate tax at his death or reducing his tax benefits at his death to insure inheritance by the children.'" Estate of Shelfer v. Comm'r of Internal Revenue, 86 F.3d 1045, 1049 (11th Cir.1996) (quoting H.R.Rep. No. 201, 97th Cong., 1st Sess. 160 (1981)).
[12] While the federal statute stands for the rule that property that goes untaxed in the estate of the first spouse to die is to be taxable in the estate of the surviving spouse, it does have an exception: it does not apply to "terminable interests." Estate of Clayton v. Comm'r of Internal Revenue, 976 F.2d 1486, 1491 (5th Cir.1992). Terminable property interests are those interests that will terminate upon the occurrence of an event, the failure of an event to take place, or after a certain time period. 26 U.S.C. § 2056(b)(1). "An interest that terminates does not form part of the death estate of the surviving spouse, so if a terminable interest in property were deductible in the first estate, such property would escape tax in the estates of both spouses." Estate of Clayton, 976 F.2d at 1491 (emphasis in original). The QTIP is, in essence, an exception to this exception. Id.